Nos. 2--07--1124 & 2--07--1125 cons.      Filed:  10-16-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WALTER STACKMAN, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--MR--394 |
| | ) | |
| THE CITY OF GENEVA and | ) | |
| THE CITY OF GENEVA HISTORIC | ) | |
| PRESERVATION COMMISSION, | ) | Honorable |
| | ) | Michael J. Colwell, |
| Defendants-Appellees. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| WALTER STACKMAN, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--MR--413 |
| | ) | |
| THE CITY OF GENEVA and | ) | |
| THE CITY OF GENEVA HISTORIC | ) | |
| PRESERVATION COMMISSION, | ) | Honorable |
| | ) | Michael J. Colwell, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

In these consolidated cases, plaintiff, Walter Stackman, appeals from the orders of the trial

court (1) affirming, on administrative review, the decision of the city council of defendant the City

of Geneva; and (2) denying his motion for summary judgment and granting summary judgment in

favor of defendants, the City of Geneva and the City of Geneva Historic Preservation Commission (HPC) on his complaint for declaratory judgment and injunctive relief. We reverse.

Plaintiff lives at 406 S. Fourth Street in Geneva. This home, built in 1945, is located within the Geneva Historic District (Historic District), which was created by city ordinance in 1987. A historic district is defined as:

>"Any area established by city ordinance which includes or encompasses such historic sites, landmarks, buildings, signs, appurtenances, structures, or objects as may be determined as appropriate for historic preservation." Geneva Municipal Code, art. XIX, §2--461 (eff. October 16, 1995).

Plaintiff's house is listed by the HPC as a "contributing" structure within the District

>"in that it illustrates the evolution of housing styles over a broad period of time. In the historic district we have a broad variety of styles - from high style Italianates to our local vernacular worker's cottages. This is the later version of the worker's cottage - a utilitarian ranch home with simple design."

In July 2006, plaintiff began to replace some exterior doors and to replace the remaining wood windows with vinyl windows. Some original wood windows had been replaced with vinyl windows in 2002. The HPC notified plaintiff that it needed to review the project before the windows could be replaced. Plaintiff filed an application with the HPC, which held a hearing on July 18, 2006. Plaintiff's application was denied. Plaintiff appealed the HPC's decision to the Geneva city council, which upheld the HPC's decision on August 7, 2006. Plaintiff then filed a complaint for administrative review in the trial court on September 8, 2006, which is the basis of case number 2--07--1124.

On September 18, 2006, plaintiff filed a complaint for declaratory judgment and a permanent injunction against defendants, the subject of case number 2--07--1125. On October 22, 2007, the trial court entered judgments in both cases. The court affirmed the decision of the Geneva city council on administrative review and, in ruling on cross-motions for summary judgment in the declaratory judgment suit, denied plaintiff's motion while granting that of defendants. These appeals then followed.

We will first address defendants' motion to supplement the record in case number 2--07--1125, which we have ordered taken with the case. Defendants seek to supplement the record in the declaratory judgment case with the record from the administrative review case. However, a party may supplement the record on appeal only with documents that were actually before the trial court. Radosevich v. Industrial Comm'n, 367 Ill. App. 3d 769, 772 (2006). This court may take judicial notice of a written decision that is part of the record in an administrative tribunal or another court, because such documents fall within the category of readily identifiable facts that are capable of instant and unquestionable demonstration. Hermesdorf v. Wu, 372 Ill. App. 3d 842, 850 (2007). Here, the trial court, Judge Colwell presiding, heard both of these consolidated cases and even issued judgments in both cases on the same day. In its ruling in the declaratory judgment case, the trial court referenced various pages of the record in the administrative review case. While most of these references are to pages containing copies of City of Geneva ordinances, the trial court described one such reference as follows:

"In fact, Walter Stackman acknowledges it was his responsibility to obtain a building permit. Such acknowledgment was conceded by plaintiff's attorney, Leonard Seraphin, in his August

7, 2006, Written Appeal of HPC Decision to the City Council. (GE/STA 60 [the numbering system used by defendants for the record filed on administrative review])."

Thus, while we deny defendants' motion to supplement the record in case number 2--07--1125 with the entire record from case number 2--07--1124, we cannot ignore that which the trial court specifically relied upon and cited to in its opinion, especially where plaintiff never objected to such reliance.

We will deal first with the appeal arising out of the declaratory judgment suit. Plaintiff contends that the trial court erred in granting defendants' motion for summary judgment and in denying his motion for summary judgment. Summary judgment is proper when the pleadings, admissions, depositions, and affidavits on file, viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. G.I.S. Venture v. Novak, 388 Ill. App. 3d 184, 187 (2009). The interpretation and applicability of legislation present questions of law that are suitable for resolution through summary judgment. G.I.S. Venture, 388 Ill. App. 3d at 187. We review de novo the meaning and effect of statutory provisions as well as the trial court's grant or denial of summary judgment. G.I.S. Venture, 388 Ill. App. 3d at 187.

In his complaint, plaintiff styled "the question presented by this case" as whether the HPC: "has the jurisdiction and power to approve or deny an attempt by a property owner to modify the windows in structures located within the [Historic] District. It is a facial challenge to the policy of the [HPC]."

Plaintiff alleged that the HPC had ordered him to remove the windows that he had already installed and had "threatened" to bring him before a hearing officer and fine him in excess of $700 per day.

He had not sought, "nor do the ordinances of" Geneva require, the issuance of a building permit to replace windows, and the HPC had no authority "to review any activity that does not require a building permit, including the replacement of windows and doors." Thus plaintiff sought a declaration that: (1) defendants lacked jurisdiction to regulate window or door replacement in the Historic District, where the activity would not otherwise require a building permit, or to approve, deny, prohibit, or punish plaintiff's replacing his windows and doors; and (2) the replacement of windows and doors did not require a building permit. Plaintiff also sought a permanent injunction barring defendants from "regulating any activity within the Historic District that does not require a building permit" and from prosecuting him for replacing his windows and doors.

The HPC was initially created, under a different name, as an advisory body in 1982. In 1995, article XIX of the Geneva Municipal Code was comprehensively amended by Ordinance 94--11, and the HPC was reconstituted with additional authority, including the authority:

"(1) To advise individuals seeking to construct new buildings or redevelop existing buildings and/or areas and sites within the Historic District(s) established by the City Council.

(2) To educate individuals as to the significance of historic structures or sites, and recommend style, color, building materials or exterior features that will be compatible with the Historic District.

\*\*\*

(4) To review applications for building permits, demolition permits, or sign permits relating to public or private real property designated as a Landmark or located within a Historic District, including public property which does not require a permit, and to advise the person in charge of the architectural features, style, color, building materials, and general site

design that will enhance the proposed redevelopment or new construction in terms of its historic character or its relationship to the District." (Emphasis in original.) Geneva Municipal Code, art. XIX, §§2--466(a)(1), (a)(2), (a)(4) (eff. October 16, 1995).

Section 2.469 of Ordinance 94--11 amended the procedures for designating historic preservation districts. Pursuant to the ordinance,

"Once an Historic District has been designated[,] no exterior architectural feature of a building or structure within such district may undergo alteration, construction, demolition or removal if such alteration, construction, demolition or removal would be subject to the issuance of a determination of appropriateness under the provisions of the Article. Nothing in this paragraph shall operate to bar ordinary repair and maintenance or any work that is necessary to prevent or correct an imminently dangerous or hazardous condition." Geneva Municipal Code, art. XIX, §2.469(a)(12) (eff. October 16, 1995).

Exterior features were defined to include:

"the architectural style, general design and general arrangement of the exterior of a building or other structure, including the color, kind, and texture of the building material and the type and style of all windows, doors, light fixtures, signs, other appurtenant fixtures and other natural features such as trees and shrubbery." (Emphasis added.) Geneva Municipal Code, art. XIX, §2--461 (eff. October 16, 1995).

Alteration is defined as "[a]ny act or process which changes one or more of the 'exterior features' of the property and improvements which have been designated for preservation under this chapter." Geneva Municipal Code, art. XIX, §2--461 (eff. October 16, 1995). Nothing in article XIX "shall be construed to prevent the ordinary maintenance or repair of any exterior feature in a Historic

District which does not involve change in the design, material, color, or other appearance thereof." Geneva Municipal Code, art. XIX, §2--473 (eff. October 16, 1995).

Clearly, plaintiff here sought to alter exterior architectural features of his house; he sought to change the type and style of his windows and doors. No such alteration may be begun if the alteration "would be subject to the issuance of a determination of appropriateness under the provisions of the Article." Geneva Municipal Code, art. XIX, §2.469(a)(12) (eff. October 16, 1995). The only time that the article specifies that the HPC is to issue a "determination of appropriateness" is in relation to the review of plans that must be submitted with applications for building, demolition, or sign permits. See Geneva Municipal Code, art. XIX, §§2--470 (a)(2), (a)(3), (a)(4) (eff. _____). While the HPC is empowered to "review applications" for permits and, apparently, changes to public property in the Historic District, which do not require a permit (see Geneva Municipal Code, art. XIX, §2--466 (4) (eff. _____)), there is no authority granted to review changes to private property in the Historic District that do not require some type of permit. The opportunity to grant such authority was available to Geneva when it enacted its historic preservation ordinance. For example, in Lombard Historical Comm'n v. Village of Lombard, the relevant ordinance provided in part: " 'The [Lombard Historical] Commission shall have the authority to review all proposed alterations, regardless of whether or not they require a building permit.' " Lombard Historical Comm'n v. Village of Lombard, 366 Ill. App. 3d 715, 719 (2006). No such express grant of authority exists in the case before us, and we will not read such a grant into the Geneva ordinance. The trial court erred in finding that the HPC had the authority to review changes to private property in the Historic District where no such permit is required.

The question remains, then, as to whether the replacement of windows in a house in the Historic District requires a permit. The Geneva Municipal Code provides:

"It is hereby required that a permit be obtained in advance and all other requirements of the building code be complied with whenever a building or structure, or parts or appurtenances thereof, such as water supply, sewage disposal, plumbing installation and electrical installation, and regulated by this title, is erected, installed, altered, converted, remodeled, structurally repaired, moved or changed." Geneva Municipal Code, Art. ___, §10--1--5 A. 1 (eff. _____).

In his deposition, building commissioner Charles Lencioni stated that a homeowner living outside the Historic District who wished to install new windows in his home would not be required to obtain a building permit for such work "[a]s long as the [window] opening wasn't getting any larger." Lencioni considered such work done outside the Historic District to be "minor maintenance, and he applied the same logic to the replacement of doors. The following colloquy took place soon thereafter:

"Q. Where in that - where in Title 10 does it say that an alteration that doesn't require a permit in the - outside the district can nevertheless require a permit within the district?

A. [Lencioni] It doesn't say that in the - in the Municipal Code. It's an interpretation.

Q. And who makes that interpretation?

A. I do, as the Building Commissioner.

***

Q. And your interpretation is based on the language in 10--1--5A1 of the code that says, 'All other requirements of the Building Code be complied with'; is that fair to say?

A. That's correct. And the Historic Preservation Ordinance is in the Building Code. It's a part of the Building Code."

Lencioni also testified that he knew that the replacement of plaintiff's windows did not require enlarging the window openings.

At best, it appears that defendants are inconsistent in their interpretation and application of Geneva's building code. On appeal, defendants argue:

"Work on a house in the HD which involves taking out windows or replacing windows, i.e., 'changing' defined 'exterior features' or 'changing' the materials in those windows exterior features [sic], by definition means that 'parts or appurtenances' of a 'building or structure' 'regulated by [the Building Code] is [being] erected, installed, altered, converted, remodeled, structurally repaired, moved or changed' within the meaning of Code Section 10--1--5A."

However, Geneva's own building commissioner, Lencioni, testified that such work done outside the Historic District was considered to be "minor maintenance" that did not require a permit unless the window openings were being enlarged. There is nothing in the building code that differentiates permit requirements for similar work done inside and outside the Historic District. If the replacement of a window is an alteration or a changing of the "parts or appurtenances" of a structure, it requires a building permit, whether it occurs inside or outside the district. Nothing in the building code allows, let alone requires, a different outcome based on the location of the structure.

Defendants point out that the trial court must also consider the admissions on file in determining whether to grant summary judgment. In this case, plaintiff made the following admission in a filing before the Geneva city counsel two months before initiating the declaratory judgment suit:

"Walter Stackman is an excellent citizen of Geneva and would not knowingly violate any City ordinance or regulation. He acknowledges it was his responsibility to obtain a building permit, and he apologizes to the Counsel [sic] for his failure to do so. The contractor who replaced the windows five years ago did not obtain a building permit, and the current contractor also failed to obtain a building permit." (Emphasis added.)

However, plaintiff cannot be bound by that admission, as it is an admission to a conclusion of law, which is properly left to the trial court. See Village of Oak Lawn v. Faber, 378 Ill. App. 3d 458, 475 (2007).

Because the replacement of windows that does not necessitate enlarging the window openings does not normally require a building permit, and there is no statutory authority to require such a permit when the same work is done in the Historic District, we conclude that plaintiff was not required to obtain a building permit in this instance. Thus, the trial court erred in granting summary judgment in favor of defendants and failing to grant summary judgment in favor of plaintiff.

The trial court also erred in affirming the city council's order in case number 2--07--1124, since the HPC had no authority to review, approve, or deny plaintiff's planned installation of windows and doors.

For these reasons, the judgments of the circuit court of Kane County are reversed.

Reversed.

. JORGENSEN and SCHOSTOK, JJ., concur.